# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| STARLIGHT INTERNATIONAL LTD. LP, a California Limited Partnership | Case No. C08 01894 RS |
| Plaintiff, | **[PROPOSED] ORDER #1** |
| v. | Judge: The Hon. Richard Seeborg<br>Date:   June 25, 2008<br>Time: 9:30am<br>Courtroom: 4, 5th Floor |
| LIFEGUARD HEALTH LLC, a Delaware Limited Liability Company | |
| Defendant. | |

     Upon consideration of Lifeguard Health LLC's Motion to Dismiss, or in the alternative, Transfer Venue Against Starlight Inernational LTD, LP., any opposition thereto, and for good cause shown, it is, by the Court, this _____ day of _____, 2008,

     **ORDERED** that the Motion is hereby **GRANTED**, and it is

     **FURTHER ORDERED** that the claims against Lifeguard Health LLC are dismissed with prejudice, each side to bear its/his own fees and costs.

_____

Honorable Richard Seeborg

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| STARLIGHT INTERNATIONAL LTD. LP, a California Limited Partnership<br><br>Plaintiff,<br><br>v.<br><br>LIFEGUARD HEALTH LLC, a Delaware Limited Liability Company<br><br>Defendant. | Case No. C08 01894 RS<br><br>[PROPOSED] ORDER #2<br><br>Judge: The Hon. Richard Seeborg<br>Date:    June 25, 2008<br>Time: 9:30am<br>Courtroom: 4, 5th Floor |

Upon consideration of Lifeguard Health LLC's Motion to Dismiss, or in the alternative, Transfer Venue Against Starlight International LTD, LP., any opposition thereto, and for good cause shown, it is, by the Court, this _____ day of _____, 2008,

**ORDERED** that the Motion is hereby **GRANTED**, and it is

**FURTHER ORDERED** that the claims against Lifeguard Health LLC are transferred to the United States District Court for the Eastern District of Pennsylvania, each side to bear its/his own fees and costs.

_____
Honorable Richard Seeborg

1 | **White and Williams LLP**
**Lawrence J. Bistany (Bar No. 75846)**
2 | **1800 One Liberty Place**
3 | **Philadelphia, PA  19103-7395**
**Phone: 215.864.6306**
4 | **Fax: 215.789.7506**
**E-mail: bistanyl@whiteandwilliams.com**
5 |
6 | **Attorneys for Defendant,**
**Lifeguard Health LLC**
7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **NORTHERN DISTRICT OF CALIFORNIA**

10 | **SAN JOSE DIVISION**

11 |

STARLIGHT INTERNATIONAL LTD. LP,     Case No. C08 01894 RS
a California Limited Partnership

**DEFENDANT LIFEGUARD**
Plaintiff,     **HEALTH LLC'S REPLY TO**
**PLAINTIFF'S RESPONSE TO**
v.     **MOTION TO DISMISS, OR IN**
**THE ALTERNATIVE,**
**TRANSFER VENUE TO**
LIFEGUARD HEALTH LLC, a Delaware Limited     **PENNSYLVANIA**
Liability Company

**ORAL ARGUMENT**
Defendant.     **REQUESTED**

Judge: The Hon. Richard Seeborg
Date:   June 25, 2008
Time: 9:30am
Courtroom: 4, 5th Floor

Defendant Lifeguard Health, LLC ("Lifeguard") submits this brief in support of its Reply to Plaintiff Starlight International, Ltd., LP ("Starlight") Response to Lifeguard's Motion to Dismiss or, In The Alternative, Transfer Venue to Pennsylvania ("Motion"). The hearing on this Motion is noticed for June 25, 2008 at 9:30 a.m. Lifeguard, in its Motion, requests that this Court dismiss this action or, in the alternative, transfer venue because this Court lacks personal jurisdiction over Lifeguard.

## I.    INTRODUCTION

The arguments set forth in Starlight's Response to Lifeguard's Motion are baseless. Starlight simply cannot show that Lifeguard's contacts with California were "continuous and systematic" as required before a court may exercise general jurisdiction over a non-resident defendant. See Scharzeneggar v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004). Further, this Court cannot exercise specific jurisdiction over Lifeguard because Starlight's claims have little to do with Lifeguard's alleged contacts with California. See Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir.). Lifeguard's contacts with California are attenuated, at best. See PTI, Inc. v. Philip Morris, Inc., 100 F.Supp.2d 1179, 1189 (C.D.Cal. 2000).

Under the circumstances, the denial of Lifeguard's Motion would serve an injustice as this Court does not have personal jurisdiction over Lifeguard.

## II.    ISSUE

Whether this action should be dismissed or, in the alternative, transferred to the Eastern District of Pennsylvania because this Court lacks personal jurisdiction over Lifeguard Health LLC?

1

III.    **RELEVANT FACTS**

On April 9, 2008, Starlight filed a Complaint against Lifeguard alleging Trademark Infringement in Violation of the Lanham Act, Common Law Trademark Infringement, and Unfair Competition.  On May 6, 2008, a Stipulation for Extension of Time was filed by the parties, permitting Lifeguard until May 19, 2008 to answer, plead, or otherwise move.  On May 19, 2008, Lifeguard filed a Motion to Dismiss or, in the Alternative, Transfer Venue to Pennsylvania.  A Response to the Motion was filed by Starlight on June 3, 2008 ("Response").

Lifeguard is a limited liability company organized and existing under the laws of the State of Delaware.  Lifeguard's principal place of business is Plymouth Meeting, Pennsylvania.  Although Starlight's Complaint contained an allegation regarding a statutory basis for subject matter jurisdiction over the claims, the Complaint did not contain an averment establishing the basis for this Court's exercise of personal jurisdiction over Lifeguard.   Lifeguard does not dispute that the federal courts have subject matter jurisdiction over this matter.   However, Lifeguard contends that this Court lacks personal jurisdiction over Lifeguard.

IV.    **ARGUMENT**

Starlight alleged in its Response that Lifeguard has "significant commercial contacts" with California.  This bold statement made by Starlight, however, has no support as Starlight based its contention on the unilateral activities of third parties and Lifeguard's random and fortuitous contacts with California.  As explored in detail in Lifeguard's Motion, courts in the Ninth Circuit take a serious look at whether a defendant could have reasonably anticipated being haled into a court within the circuit.  Coremetrics Inc. v. Atomic Park.com, LLC, 370 F.Supp.2d 1013, 1021 (N.D.Ca. 2005)(citing World-Wide Volkswagon Corp. v. Woodson, 100 S.Ct. 559, 567 (1980)).

2

1  Lifeguard did not purposely avail itself of jurisdiction in California.  It would be

2  unreasonable to subject Lifeguard to jurisdiction in California as Lifeguard's very limited

3  contacts with California were no different than Lifeguard's very limited contacts with nearly

4  every state in the nation.  A finding that this Court has personal jurisdiction over Lifeguard is

5  equivalent to throwing a dart at a poster of the nation and randomly assigning jurisdiction to

6  the state which the dart hits.

7

8  **A.     STARLIGHT'S RESPONSE FAILS TO SHOW THAT LIFEGUARD'S RELATIONSHIP WITH YAHOO! SUBJECTS LIFEGUARD TO JURISDICTION IN CALIFORNIA**

9

10  Lifeguard is in the business of manufacturing and selling dietary supplement products.

11  Based on the type of business, Lifeguard must enter into various contracts for its supplies,

12  marketing, packaging, advertising, etc.  The companies with whom Lifeguard contracts are

13  located across the nation.  One of the companies with whom Lifeguard contracts is Yahoo! Inc.

14  ("Yahoo!"), "the world's largest global online network of integrated services and…one of the

15  most trafficked Internet destinations worldwide".  See Yahoo! Inc. Press Room, available at

16  http://yhoo.client.shareholder.com/press/.  Yahoo! is so popular that www.dictionary.com

17

18  defines Yahoo! as "a widely used search engine for the web that finds information, news,

19  images, products, finance."  DICTIONARY.COM , Definition of "Yahoo" (2008), available at

20  http://dictionary.reference.com/browse/yahoo (emphasis added).

21

22  Yahoo's headquarters happen to be located in California.  An argument that Lifeguard

23  would be subject to jurisdiction in California because Yahoo!, a global leader in the industry, is

24  located in California begs the conclusion that the millions of merchants using Yahoo!'s

25  services would be subject to jurisdiction in California in any matter involving any party

26

27  3

28

1    regardless of where the merchant is located.  This conclusion simply cannot be reached by this

2    Court.

3        Merchants who use Yahoo!'s webhosting and merchant services must accept the

4    "Terms of Service" which govern the relationship between Yahoo! and the merchant.  The

5    Terms of Service contain a Choice of Law and Forum provision, at paragraph 23.0, which

6    provides the governing law and location of any lawsuit between Yahoo! Inc. and Lifeguard.

7    

8    The paragraph provides:

9            <u>These Terms and the relationship between You [the Merchant] and Yahoo! shall
            be governed by the laws of the State of California</u> without regard to its conflict

10           of law provisions, and specifically excluding from application to these Terms
            that law known as the United States Nations Convention on the International

11           Sale of Goods.  <u>You [the Merchant] and Yahoo! agree to submit to the personal
            jurisdiction of the courts located within the county of Santa Clara, California.</u>

12           The failure of Yahoo! to exercise or enforce any right or provision of these
            Terms shall not constitute a waiver of such right or provision.

13    

14    Yahoo! Terms of Service, ¶ 23.0, attached hereto as Exhibit "A" (emphasis added).

15        Certainly, Yahoo!'s Terms of Service do not govern Lifeguard's relationship with non-

16    parties to the Terms of Service.  The Terms of Service specify that the terms govern the

17    relationship between "You" [the merchant] and Yahoo!.  Starlight seeks to construe the Terms

18    of Service to mean that every relationship that Lifeguard enters into should be governed by ¶

19    

20    23.0 of the Terms of Service.  Because of the unambiguous language of the Terms of Service,

21    Starlight's proposed interpretation of the Terms of Service is unreasonable and should not be

22    accepted by this Court.

23        In Starlight's Affidavit of Scott Hickman, at paragraph 9, Starlight provides:

24    "Lifeguard agrees 'to submit to the personal jurisdiction of the courts located within the county

25    

26    of Santa Clara, California.'"  <u>See</u> Affidavit of Scott Hickman, ¶ 9.  Starlight failed to mention

27                                                    4

28

that Lifeguard only agreed to submit to that jurisdiction in disputes between Lifeguard and

Yahoo!. See Yahoo! Terms of Service, ¶ 23.0, attached hereto as Exhibit "A". This critical

detail is crucial to understanding jurisdiction in this matter and certainly should not have been

removed when Starlight cited to the Terms of Service.

Additionally, Lifeguard's relationship with Yahoo! was developed by a Pennsylvania

corporation, Solid Cactus. See Letter from Solid Cactus to Terry Tormey of Lifeguard,

attached hereto as Exhibit "B". Solid Cactus recommended that Lifeguard choose Yahoo! for

its webhosting and merchant solution services. Id.

**B.    STARLIGHT'S RESPONSE TO THE MOTION DOES NOT PROVE THAT LIFEGUARD'S RANDOM, FORTUITOUS, AND ATTENUATED CONTACTS WITH CALIFORNIA SUBJECT LIFEGUARD TO PERSONAL JURISDICTION IN CALIFORNIA**

**1.    STARLIGHT'S INCORRECT REPRESENTATION OF LIFEGUARD'S CALIFORNIA SALES**

On page five of Starlight's Response Brief, Starlight jumbles up the numbers provided

by Lifeguard regarding Lifeguard's sales. See Starlight's Response Brief, p.5. Although

Starlight filed a Notice of Errata on June 10, 2008 regarding its inclusion of one incorrect

figure in Starlight's Response, other figures provided by Starlight were also wrong. Lifeguard

will give Starlight the benefit of the doubt and presume that Starlight did not intend to provide

this Court with grossly inaccurate numbers for monetary amounts and percentages that are

critical to this matter.

Starlight's brief provided: "[B]ased on Bauer's [President of Lifeguard] statement that

9.7% of Lifeguards's internet sales were to California customers and generated $104,018.00, it

appears that Lifeguard total sales through its Yahoo!-hosted website are approximately

5

1   $1,000,000.00.  Thus, Lifeguard makes substantial sales made through its California internet

2   commerce host."  Id.

3       In actuality, Robert Bauer's Affidavit provided vastly different figures.  Robert Bauer's

4   Affidavit stated that only 0.24% of Lifeguard's website sales were to California customers and

5   generated only $2,559.00 in sales.  See Affidavit of Robert Bauer, ¶ 20, attached hereto as

6   Exhibit "D".  Further, Robert Bauer's Affidavit provided that Lifeguard's total sales made

7   through Lifeguard's website was $104,018.30, not $1,000,000.00 as provided by Starlight's

8   Response.  Id. at ¶ 18.  Lifeguard's sales from all sources within California, amounting to only

9   .6% of its total business for a 13 month period (April 1, 2007 to April 30, 2006), totaled only

10  $6,829.00.  Id. at ¶ 19.  Lifeguards's sales records, are the source of these figures and were

11  attached to Lifeguard's Motion as Exhibit "B".

12      Starlight made the argument that the facts are "indistinguishable" from those in the

13  Coremetrics, Inc. v. Atomic Park.com, LLC, 370 F.Supp.2d 1013 (N.D.Cal. 2005) case.  See

14  Starlight's Response, p.6.  This argument must have been based on Starlight's jumbling of

15  Lifeguard's sales figures.  As noted in Lifeguards' Motion, over a ten-month period, California

16  customers in Coremetrics bought more than $3.3 million worth of merchandise from the

17  Coremetrics defendant.  370 F.Supp.2d at 1022.  The high volume of sales over a ten-month

18  period in Coremetrics, over $3.3 million, is vastly different from the very low volume of sales

19  over a thirteen-month period in this case, $6,829.00.  The facts in this case are easily

20  distinguishable to the facts in Coremetrics.

24          **2.     CONTRARY TO THE REPRESENTATION MADE BY
25                  STARLIGHT, THE FACT THAT THE INTERNET PROTOCOL
26                  ADDRESS FOR THE DOMAIN NAME
27                  "LIFEGUARDFORLIFE.COM" IS ASSOCIATED WITH A**

6

## CALIFORNIA CORPORATION DOES NOT SUBJECT LIFEGUARD TO JURISDICTION IN CALIFORNIA

Starlight's brief provides that the Internet Protocol Address ("IP address") for lifegaurdforlife.com is associated with "Inktomi Corporation located in Sunnyville, California" and that, therefore, Lifeguard is subject to jurisdiction in California. See Starlight's Response Brief, p. 3. Lifeguard disagrees. In order to understand why the location of Inktomi Corporation has no bearing on jurisdiction in this matter, it is important to understand the basics regarding Lifeguard's domain names, its webhost, its domain server, and its domain name's IP address.

When a merchant registers a domain name, it is completed through a domain name registry company. See Wikipedia Domain Name Register page, attached hereto as Exhibit "C". The domain name, lifeguardforlife.com, is registered through the domain name registry company GoDaddy.com. See GoDaddy.com Search Results, attached hereto as Exhibit "E". Records show that the Registrant of the domain name is "LifeGuard Health" with an address of 502 West Germantown Pike, Suite 750, Plymouth Meeting, Pennsylvania 19462. See Whois.Net Information for lifeguardforlife.com, attached hereto as Exhibit "F"; see also GoDaddy.com Search Results, attached hereto as Exhibit "E".

Once a domain name is registered, the merchant must choose a "host" for its website. See Wikipedia Web Hosting Service page, attached hereto as Exhibit "C". The company which hosts lifeguardforlife.com is Yahoo!. See GoDaddy.com Search Results, attached hereto as Exhibit "E". Yahoo! is possibly the largest website hosting company in the world. See Yahoo! Inc. Press Room, available at http://yhoo.client.shareholder.com/press/. When a merchant houses its domain name through a hosting company, the merchant does not choose

7

1    what domain server will house the domain name.  Rather, the domain server is randomly

2    assigned by the domain name host and can be located anywhere in the world.  A domain

3    name's Internet Protocol address ("IP address") is  a series of numbers which are generated by

4    the domain server and assigned to the domain name.  The location of the domain server has no

5    bearing on the merchant.

6         When one conducts a search of the IP address for lifeguardforlife.com, one sees that the

7    IP address is housed on a domain server at Inktomi Corporation in Sunnyvale, California.  See

8    Domain Tools Search Results for lifeguardforlife.com, attached hereto as Exhibit "G".

9    Inktomi Corporation is a company owned by Yahoo!.  See Wikipedia results for Inktomi

10   Corporation, available at http://enwikipedia.org/wiki/inktomi.  The location of the webhost's

11   domain server has no relevance to the owner of the domain name and, in many cases, the

12   domain name owner does not even know where the server is located.

13        There is no case law supporting the proposition that the location of a domain server

14   housing a domain name which the domain server was assigned by a domain name host can

15   subject the merchant who owns the domain name to jurisdiction in the domain server's

16   location.  This proposition asserted by Starlight has no merit

17        **3.    LIFEGUARD'S ATTENDANCE AT A TRADE SHOW IN
           CALIFORNIA DOES NOT SUBJECT IT TO JURISDICTION IN
           CALIFORNIA**

18        In numerous cases, the Ninth Circuit declined to exercise personal jurisdiction over

19   defendants with relatively greater contacts with the forum state than Lifeguard has with

20   California.  The Ninth Circuit in Congoleum Corp. v. DLW Aktiengesellschaft held that the

21   court did not have personal jurisdiction over defendants despite marketing efforts, product

8

promotion, and attendance at trade shows within the forum state. 729 F.2d 1240, 1242-43 (9th Cir. 1984).

Lifeguard's participation in 1 trade show in California in March of 2007 (not July of 2007, as provided in Starlight's Response Brief at p. 3), out of 37 trade events participated in by Lifeguard during the course of the past year and a half, should not carry any weight in this Court's analysis of whether California has personal jurisdiction over Lifeguard. The 37 events attended by Lifeguard were hosted by various organizations and were located throughout the United States. See Lifeguard's List of Events, attached hereto as Exhibit "H". The California trade show focused on by Starlight in its Response to Lifeguard's Motion to Dismiss was hosted by the International Health, Racquet & Sportsclub Association ("IHRSA"). See Starlight's Response Brief. p.3. The IHRSA trade show was the only trade event ever attended by Lifeguard in California. See Lifeguard's List of Events, attached hereto as Exhibit "H".

The IHRSA trade show was not directed at generating sales within California. Rather, it was an "international convention" hosted by a trade association which represents approximately 9,100 for-profit health and fitness facilities and over 700 supplier companies in 71 countries. See www.ihrsa.org; see also 2008 Event Flyer, attached to Starlight's Response Brief as Exhibit "F". The IHRSA convention was attended by representatives of health and fitness facilities from around the world. Id. Lifeguard was one of over 420 exhibitors at the particular trade show. Id.

### 4.  A CALIFORNIA COMPANY'S ENDORSEMENT OF LIFEGUARD DOES NOT SUBJECT LIFEGUARD TO JURISDICTION IN CALIFORNIA

MPOWER Solutions' endorsement of Lifeguard does not subject Lifeguard to jurisdiction in California. In each case, "it is essential…that there be some kind of act by

9

which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Love v. The Mail on Sunday, et al., 2006 WL 4046170, *6 (C.D.Cal.)(citing Regents of the Univ. of N.M. v. The Superior Ct. of Los Angeles County, 52 Cal.App.3d 964, 971 (1975)).

MPOWER Solutions listed Lifeguard among its other "Healthy Retail Partners" listed on its website. See Exhibit "G" to Starlight's Response to Lifeguard's Motion to Dismiss. MPOWER Solutions' website's inclusion of a sentence regarding Lifeguard and a link to Lifeguard's website in no way provides a basis to subject Lifeguard Health to jurisdiction in California. Lifeguard Health has no control over MPOWER Solutions and, accordingly, cannot be subject to jurisdiction in California because MPOWER Solutions listed Lifeguard on its website.

## V.    CONCLUSION

In numerous cases, the Ninth Circuit declined to exercise personal jurisdiction over defendants with relatively greater contacts with the forum state than Lifeguard has with California. The inconvenience that would ensue if Lifeguard is hauled to California to litigate this lawsuit would constitute a deprivation of due process. Based upon the foregoing and upon Lifeguard's Motion to Dismiss or, in the Alternative, Transfer Venue, Lifeguard respectfully requests that its Motion be granted.

Dated: June 11, 2008                              By:      s/ Lawrence J. Bistany
                                                            Lawrence J. Bistany
Of Counsel:                                                 (Bar No. 75846)

Michael N. Onufrak
Lauren A. Brill
White and Williams LLP
1800 One Liberty Place
Philadelphia, PA 19103-7395
Phone: 215.864.7174/6814

10

1

**White and Williams LLP**
**Lawrence J. Bistany (Bar No. 75846)**

2

**1800 One Liberty Place**

3

**Philadelphia, PA  19103-7395**
**Phone: 215.864.6306**

4

**Fax: 215.789.7506**
**E-mail: bistanyl@whiteandwilliams.com**

5

6

**Attorneys for Defendant,**
**Lifeguard Health LLC**

7

## UNITED STATES DISTRICT COURT

8

### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

9

10

STARLIGHT INTERNATIONAL LTD. LP, | Case No. C08 01894 RS
a California Limited Partnership

11

Plaintiff, | **PROOF OF SERVICE**

12

| **ORAL ARGUMENT**
| **REQUESTED**

13

v.

14

LIFEGUARD HEALTH LLC, a Delaware Limited | Judge: The Hon. Richard Seeborg
Liability Company | Date:   June 25, 2008

15

| Time: 9:30am
Defendant. | Courtroom: 4, 5th Floor

16

17

 I, Lawrence J. Bistany, attorney for the Defendant Lifeguard Health LLC, hereby

certify that a copy of the foregoing Defendant Lifeguard Health LLC's Reply to Plaintiff's

18

Response to Motion to Dismiss, or in the Alternative, Transfer Venue to Pennsylvania, was

19

served upon all counsel via ECF and first class mail, postage prepaid, on this 11th day of June,

20

2008, addressed as follows:

21

David G. Freedman
Attorney at Law

22

1800 Century Park East, 8th Floor
Los Angeles, California  90067

23

24

BY:   s/ Lawrence J. Bistany
Lawrence J. Bistany (Bar No. 75846)

25

WHITE AND WILLIAMS LLP
1800 One Liberty Place

26

Philadelphia, PA 19103
Telephone: 215-864-6306

27

Facsimile: 215-789-7506
E-mail: bistanyl@whiteandwilliams.com

28

PROOF OF SERVICE (Case No. C08 01894 RS)
PHLDMS1 4327912v.1

# EXHIBIT A



**YAHOO!** SMALL BUSINESS  New User? Sign Up  Small Business Home - Help

Home  Products  News & Resources    Manage your services:  Small Business  Search Marketing

**Yahoo! Small Business Consolidated Terms of Service**

**1.0 ACCEPTANCE OF TERMS**

1.1 These Yahoo! Small Business Consolidated Terms of Service ("CTOS") are between you ("You," "Your," or "Merchant") and Yahoo! Inc. and its affiliates ("Yahoo") and consists of the most recent versions of the terms and conditions of the CTOS (http://smallbusiness.yahoo.com/tos/tos.php) as well as the Yahoo! Privacy Policy (http://privacy.yahoo.com/privacy/us/fin/index.html), the Yahoo! Universal Terms of Service ("UTOS") (http://docs.yahoo.com/info/terms/), the Store Guidelines (http://docs.yahoo.com/info/guidelines/store.html), the Yahoo! Mail Additional Terms of Service (http://docs.yahoo.com/info/guidelines/mail.html) and the Small Business Mail Guidelines (http://docs.yahoo.com/info/guidelines/mail.html), and the Melbourne IT Domain Name Registration Agreement attached hereto (all together, the "Terms of Service" or "SBTOS"). Previous versions of the Terms of Service that apply to various Small Business products can be found in the Yahoo! Small Business Terms of Service Center at http://smallbusiness.yahoo.com/tos/index.php.

1.2 Yahoo! reserves the right, in its sole discretion, to change, modify, add, or remove all or part of these Terms, including but not limited to any term, applicable fee, policy, or guideline, at any time without notice or acceptance by You, except as provided in Section 4. Regardless of whether Yahoo! has provided You individual notice, Your continued use of the Service following Yahoo!'s notice or posting of changed Terms will constitute Your acceptance of such changes. It is Your responsibility to check regularly for changes to the Terms and ensure that any contact information You provide to Yahoo! is updated and correct.

1.3 If You are registering a new domain name or using a previously registered domain name in conjunction with the Service, Your use of the domain name is also subject to the policies of the Internet Corporation for Assigned Names and Numbers ("ICANN") and the appropriate Melbourne IT Domain Name Registration Agreement set forth below, which is an agreement between You and Melbourne IT, and not with Yahoo!

1.4 **BY COMPLETING THE REGISTRATION PROCESS ("Registration Process") AND CLICKING THE "I ACCEPT" BUTTON, YOU:** (a) agree to be bound by these Terms and, if applicable, the Melbourne IT Domain Name Registration Agreement; (b) represent and warrant that, if You are an individual, You are 18 years old or older or, if you are an entity, that You are a corporation, partnership, or other legal entity duly formed (and incorporated if applicable) in good standing where required to do business with all legal authority and power to accept these Terms; (c) agree to provide true, accurate, current, and complete information in the Service registration form, including billing and payment-related information and other account information (all together, the "Account Information"), and agree to maintain and update this information to keep it true, accurate, current, and complete; (d) agree to be bound by the terms of the ICANN Uniform Domain Name Dispute Resolution Policy located at http://www.icann.org/udrp/udrp.htm as may be amended or relocated from time to time; and (e) represent and warrant that You have the power and authority to enter into and perform under these Terms. If these Terms or any future changes are unacceptable to You, Your sole remedy is to cancel Your Service. **IF YOU DO NOT ACCEPT AND AGREE TO THESE TERMS, DO NOT COMPLETE THE REGISTRATION PROCESS.**

**2.0 DESCRIPTION OF SERVICE**

2.1 The complete list of services (the "Service") governed by these Terms is as follows:

Yahoo! Merchant Solutions: Merchant Starter, Merchant Standard, and Merchant Professional;
Yahoo! Web Hosting
Yahoo! Business Email ("Business Email"): Custom Mailbox and Business Mail;
Yahoo! Domains: the Yahoo! Domains product offering;
Yahoo! GeoCities: GeoCities Plus, GeoCities Pro, and GeoCities Free

2.2 If You are a Yahoo! Merchant Solutions customer, Your Service includes E-Commerce (Store) functionality, Web Hosting, Business Mail, and Yahoo! Domain Services (without a Starter Web Page). Except for Section 12 (Personal Address), these entire Terms apply to You.

Yahoo! Help - Yahoo! Small Business    Case 5:08-cv-01894-RS    Document 14-2    Filed 06/11/2008    Page 3 of 3
Page 16 of 30
Case 5:08-cv-01894-RS    Document 11-3    Filed 06/03/2008    Page 29 of 59

YOU EXPRESSLY UNDERSTAND AND AGREE THAT YAHOO! AND ITS AFFILIATES, COBRANDERS, OR OTHER PARTNERS, OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES AND AGENTS,SHALL NOT BE LIABLE,UNDER ANY CIRCUMSTANCES OR LEGAL THEORIES WHATSOEVER, FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, INCLUDING BUT NOT LIMITED TO, DAMAGES FOR LOSS OF BUSINESS, PROFITS, GOODWILL, USE, DATA OR OTHER INTANGIBLE LOSSES (EVEN IF YAHOO! HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES), RESULTING FROM: (i) THE USE OR THE INABILITY TO USE THE SERVICE; (ii) ERRORS, DEFECTS, OMISSIONS, DELAYS IN OPERATION OR TRANSMISSION, OR ANY OTHER FAILURE OF PERFORMANCE OF THE SERVICE OR THE SOFTWARE; (iii) THE COST OF PROCUREMENT OF SUBSTITUTE GOODS AND SERVICES RESULTING FROM ANY GOODS, DATA, INFORMATION, OR SERVICES PURCHASED OR OBTAINED OR MESSAGES RECEIVED OR TRANSACTIONS ENTERED INTO, THROUGH, OR FROM THE SERVICE; (iv) UNAUTHORIZED ACCESS TO OR ALTERATION OF YOUR TRANSMISSIONS OR DATA; (v) STATEMENTS OR CONDUCT OF ANY THIRD PARTY ON THE SERVICE; (vi) ANY GOOD OR SERVICE OFFERED OR SOLD THROUGH THE SERVICE; OR (vii) ANY OTHER MATTER RELATING TO THE SERVICE OR SOFTWARE.

YAHOO!'S LIABILITY TO YOU SHALL NOT, FOR ANY REASON, EXCEED THE AGGREGATE PAYMENTS ACTUALLY MADE BY YOU TO YAHOO! OVER THE COURSE OF THE EXISTING TERM. YOU ACKNOWLEDGE THAT YAHOO! HAS SET ITS PRICES IN RELIANCE UPON THE LIMITATIONS OF LIABILITY AND THE DISCLAIMERS OF WARRANTIES AND DAMAGES SET FORTH HEREIN, AND THAT THE SAME FORM AN ESSENTIAL BASIS OF THE BARGAIN BETWEEN THE PARTIES. YOU AGREE THAT THE LIMITATIONS AND EXCLUSIONS OF LIABILITY AND DISCLAIMERS SPECIFIED IN THESE TERMS WILL SURVIVE AND APPLY EVEN IF FOUND TO HAVE FAILED OF THEIR ESSENTIAL PURPOSE. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF CERTAIN WARRANTIES OR LIABILITIES, SO SOME OF THE ABOVE EXCLUSIONS MAY NOT APPLY TO YOU.

## 22.0 NOTICE

Notices under these Terms shall be by electronic mail or in writing and shall be deemed delivered upon receipt to the party to whom such communication is directed, at the addresses specified below. If to Yahoo!, such notices shall be addressed to 701 First Avenue, Sunnyvale, CA 94089, USA. If to You, such notices shall be addressed to the electronic or mailing address specified when You opened Your account, or such other address as either party may give the other by notice as provided above. Yahoo! may also provide notices of changes to these Terms or other matters by displaying notices or links to notices to You generally on the Service.

## 23.0 CHOICE OF LAW AND FORUM (LOCATION OF LAWSUIT)

These Terms and the relationship between You and Yahoo! shall be governed by the laws of the State of California without regard to its conflict of law provisions, and specifically excluding from application to these Terms that law known as the United Nations Convention on the International Sale of Goods. You and Yahoo! agree to submit to the personal jurisdiction of the courts located within the county of Santa Clara, California. The failure of Yahoo! to exercise or enforce any right or provision of these Terms shall not constitute a waiver of such right or provision.

## 24.0 FORCE MAJEURE

Except for the obligation to make payments, neither party will be liable for any failure or delay in its performance under this Agreement due to any cause beyond its reasonable control, including, but not limited to, acts of war, acts of terrorists, acts of God, earthquake, flood, embargo, riot, sabotage, labor shortage or dispute, governmental act, or failure of the Internet (not resulting from the actions or inactions of Yahoo!), provided that the delayed party: (a) gives the other party prompt notice of such cause, and (b) uses its reasonable commercial efforts to promptly correct such failure or delay in performance. If Yahoo! is unable to provide Service(s) for a period of thirty (30) consecutive days as a result of a continuing force majeure event, You may cancel the Service(s), but there shall be no liability on the part of Yahoo!

## 25.0 ASSIGNMENT

Except as expressly set forth herein, You may not assign Your rights or delegate Your duties under this Agreement either in whole or in part without the prior written consent of Yahoo!, and any attempted assignment or delegation without such consent will be void. Yahoo! may assign this Agreement in whole or part. Yahoo! also may delegate the performance of Services to third parties, including Yahoo! affiliates. This Agreement will bind and inure to the benefit of each party's successors and permitted assigns.

# EXHIBIT B

Jun. 10. 2008  2:36PM    MCDM                                      No. 2935    P. 2



# **SOLID**CACTUS®
your partner in e-commerce success

2/3/2006

Dear Terry,

Thank you for choosing Solid Cactus to set up your Yahoo! Merchant Solutions Store.  Our experts work hard to ensure that we provide a quality presentation, so your online store can build new customers and gain success.

As e-commerce developers, we understand the value of browser compatibility and intuitive design. Every visitor to your site is significant and you must capitalize by gaining their full attention.  This is the basic concept that we apply to each website we build.

Most web developers charge a monthly site maintenance fee to perform updates to your site.  By using Yahoo! Merchant Solutions, Solid Cactus empowers the site owner with the ability to make changes via the content management system.  Using this system, you have the ability to update the current content, as well as add pages, without any programming experience.

Please review the following proposal, to gain an in-depth look at the processes involved in creating a website that reflects the services you provide.

We encourage you to browse our portfolio at www.solidcactus.com/portfolio.html for examples of sites we have worked on, as well as testimonials and success stories.  If you would like to speak with some of our clients about their experience with Solid Cactus, contact information can be provided at your request.

We are confident that you will be satisfied with the results, and we look forward to being your partner in success!

Sincerely,

Kurt Illian
Sr. Solutions Advisor
(888) 361-9814
kurti@solidcactus.com

---

100 N. Wilkes-Barre Blvd., Suite 175  ·  Wilkes-Barre, Pennsylvania  18702
Phone: 1-888-361-9814  ·  Fax  570-270-6078  ·  http://www.solidcactus.com
Solid Cactus is a registered trademark of Solid Cactus, Inc., Wilkes-Barre, PA

# EXHIBIT C

*Wikipedia is sustained by people like you. Please **donate** today.*

# Domain name registrar

From Wikipedia, the free encyclopedia

A **domain name registrar** is a company accredited by the Internet Corporation for Assigned Names and Numbers (ICANN) and/or by a national ccTLD authority to register Internet domain names. These "retail" companies are often distinct from the "wholesale" domain name registry operator.

The Internet Corporation for Assigned Names and Numbers, or ICANN, has authority over generic top-level domains, or gTLDs. Examples of gTLDs include .com, .net, .org and .mobi. ICANN does not have authority over ccTLDs, or Country Code Top-Level Domains, though it is quite common for domain name registrars to offer ccTLD registration services as well. Most registrars provide DNS hosting service, but this is not required, and is often considered a separate service.

## Contents

- 1 History
- 2 Designated registrar
  - 2.1 Domain name transfers
  - 2.2 Transfer scams
- 3 See also
- 4 External links
- 5 Sources

# History

Until 1999, there was no Shared Registration System (SRS). Network Solutions (NSI) operated the .com, .net, and .org registries, and was the de jure registrar and domain name registry operator. However, several companies had set up as de facto registrars, including NetNames, who invented the idea of a commercial standalone domain name registration service in 1996. Registrars formed another link in the food chain, introducing the concept of domain name sales, effectively introducing the wholesale model into the industry. NSI followed suit, forcing the issue of separation of Registry and Registrar.

In October 1998, following pressure from the growing domain name registration business and other interested parties, NSI's agreement with the US Department of Commerce was amended, requiring the creation of an SRS that supported multiple registrars. The SRS officially opened on November 30, 1999 under the supervision of ICANN, though there had been several testbed registrars using the system since March 11, 1999. Since then, over 500 registrars have entered the market for domain name registration services.

# Designated registrar

An end-user cannot directly register and manage their domain name information with ICANN. A **designated registrar** must be chosen to have one's domain names registered and managed with the appropriate registry (NIC) on their behalf. Prior to 1999, the only .com registrar was NSI, but the approval of the SRS opened up the opportunity for other companies to be designated as registrars.

Each ICANN-accredited registrar must pay a fixed fee of US$4,000 plus a per-registrar variable fee totaling US$3.8 million divided among all registrars.

Only one designated registrar may modify or delete information about a domain name. The competition that SRS created enables the end user to choose from many registrars offering different services at varying prices. It is not unusual for an end user to wish to switch registrars. Thus, there is the domain name transfer clause.

When a registrar registers a **.com** domain name for the end-user, it must pay a maximum annual fee of US$6.00 to VeriSign and a US$0.20 administration fee to ICANN. VeriSign is the registry manager for **.com** gTLD. Low cost bulk registrars like Go Daddy and Tucows must manage their margin after paying these fees and their equipment cost. Therefore, the barrier for entry into the bulk registrar industry is high for new companies without an existing customer base.

An end-user registers either directly with a registrar, or indirectly through one or more layers of resellers. The cost generally ranges from a low of about $10 per year to about $30 per year, as of 2008. The maximum period of registration is generally 10

years ahead. [1] [2] [3] Some registrars are offering longer periods, up to one hundred years, but such services are implemented internally, by promising to renew annually, not in the official registration database. Some packages of services, such as web hosting, include the domain registration in the total package pricing.

## Domain name transfers

**Domain name transfers** is the act of designating a new registrar with the authority to add, modify, and delete information about the domain name. The usual process of a domain name transfer is:

1. The end user verifies that the whois admin contact info is correct, particularly the email address; obtains the authentication code from the old registrar, and removes any lock that has been placed on the registration.
2. The end user contacts the new registrar with the wish to transfer the domain name to their service, and supplies the authentication code.
3. The new registrar will contact the old registrar with this information.
4. The old registrar will contact the end user to confirm the authenticity of this request. The end user may have to take further action with the old registrar, such as returning to the online management tools, to re-iterate their desire to proceed, in order to expedite the transfer.
5. The old registrar will release authority to the new registrar.
6. The new registrar will notify the end user of transfer completion. The new registrar may have automatically copied over the domain server information, and everything may automatically continue to work as before. Otherwise, the domain server information will need to be updated with the new registrar.

After this process, the new registrar becomes one's designated registrar and all correspondence shall be done with them. The process may take about five days. In some cases, the old registrar may intentionally delay the transfer as long as allowable. After transfer, the domain cannot be transferred again for 60 days, except back to the previous registrar.

It is unwise to attempt to transfer a domain immediately before it expires. Because a transfer can in some cases take up to 14 days, the transfer may not complete before the registration expires, resulting in loss of the domain name registration and failure of the transfer. To avoid this, either transfer well before the expiration date, or renew the registration before attempting the transfer.[4]

### Transfer scams

With the introduction of SRS, many smaller registrars had to compete with the de facto standard, NSI. Some companies offered value added services or used viral marketing. Some companies decided to trick customers to switch from NSI.

Many of these transfer scams involve a notice sent in the mail, fax, or e-mail. Some scammers may even call by phone (as the contact information is available through WHOIS) to harvest more information. These notices would include information publicly available from the WHOIS database to add to the look of authenticity. The text would include legalese to confuse the end user into thinking that it is an official binding document.

Scam registrars go after domain names that are expiring soon or have recently expired. Expired domain names do not have to go through the authentication process to be transferred, as the previous registrar would have relinquished management rights of the domain name. Domain name expiry dates are readily available via WHOIS.

## See also

- List of top ranking domain registrars
- Drop registrar
- Domain name registry
- Independent Domain Registrars

## External links

- A list of ICANN accredited registrars.

## Sources

- ICANN. "Registry Operator Maximum Price Schedule" Revised VeriSign .com Registry Agreement: Appendix G. 16

April 2001. http://www.icann.org/tlds/agreements/verisign/registry-agmt-appg-com-16apr01.htm
- Sloan, Paul. "Who's Your Go Daddy". CNNMoney.com. Dec. 19, 2006.
  http://money.cnn.com/2006/12/18/magazines/business2/godaddy.biz2/index.htm

Retrieved from "http://en.wikipedia.org/wiki/Domain_name_registrar"
Categories: Domain name system | Domain registrars
Hidden categories: Articles lacking sources from November 2006 | All articles lacking sources | Cleanup from January 2007 | All pages needing cleanup

- This page was last modified on 9 June 2008, at 20:52.
- All text is available under the terms of the GNU Free Documentation License. (See **Copyrights** for details.)
  Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a U.S. registered 501(c)(3) tax-deductible nonprofit charity.

*Make a donation to Wikipedia and give the gift of knowledge!*

# Web hosting service

From Wikipedia, the free encyclopedia
  (Redirected from Web hosting)

A **web hosting service** is a type of Internet hosting service that allows individuals and organizations to provide their own website accessible via the World Wide Web. Web hosts are companies that provide space on a server they own for use by their clients as well as providing Internet connectivity, typically in a data center. Web hosts can also provide data center space and connectivity to the Internet for servers they do not own to be located in their data center, called colocation.

## Contents

- 1 Service scope
- 2 Hosting reliability and uptime
- 3 Types of hosting
- 4 Obtaining hosting
- 5 References
- 6 See also

**Types of Internet hosting service**
- Full-featured hosting services
  - Virtual private server
  - Dedicated hosting
  - Colocation centre
- **Web hosting**
  - Free hosting
  - Shared hosting
  - Clustered hosting
  - Reseller hosting
  - Application-specific
    - Blog hosting
    - Guild hosting
    - Image hosting
    - Video hosting
    - Wiki farms
- File hosting
- Remote backup service
- Game server hosting
- DNS hosting
- E-mail hosting

## Service scope

The scope of hosting services varies widely. The most basic is web page and small-scale file hosting, where files can be uploaded via File Transfer Protocol (FTP) or a Web interface. The files are usually delivered to the Web "as is" or with little processing. Many Internet service providers (ISPs) offer this service free to their subscribers. People can also obtain Web page hosting from other, alternative service providers. Personal web site hosting is typically free, advertisement-sponsored, or cheap. Business web site hosting often has a higher expense.

Single page hosting is generally sufficient only for personal web pages. A complex site calls for a more comprehensive package that provides database support and application development platforms (e.g. PHP, Java, Ruby on Rails, and ASP.NET). These facilities allow the customers to write or install scripts for applications like forums and content management. For e-commerce, SSL is also highly recommended.


An example of "rack mounted" servers.

The host may also provide an interface or control panel for managing the Web server and installing scripts as well as other services like e-mail. Some hosts specialize in certain software or services (e.g. e-commerce). They are commonly used by larger companies to outsource network infrastructure to a hosting company. To find a web hosting company, searchable directories can be used. One must be extremely careful when searching for a new company because many of the people promoting service providers are actually affiliates and the reviews are biased.

## Hosting reliability and uptime

Hosting uptime refers to the percentage of time the host is accessible via the internet. Many providers state that they aim for a 99.9% uptime, but there may be server restarts and planned (or unplanned) maintenance in any hosting environment.

A common claim from the popular hosting providers is '99% or 99.9% server uptime' but this often refers only to a server being powered on and doesn't account for network downtime. Real downtime can potentially be larger than the percentage guaranteed by the provider. Many providers tie uptime and accessibility into their own service level agreement (SLA). SLAs sometimes include refunds or reduced costs if performance goals are not met.


Multiple racks of servers, and how a datacenter commonly looks.

## Types of hosting

Internet hosting services can run Web servers; see Internet hosting services.

Hosting services limited to the Web:

- **Free web hosting service:** is free, (sometimes) advertisement-supported web hosting, and is often limited when compared to paid hosting.
- **Shared web hosting service:** one's Web site is placed on the same server as many other sites, ranging from a few to hundreds or thousands. Typically, all domains may share a common pool of server resources, such as RAM and the CPU. A shared website may be hosted with a reseller.
- **Reseller web hosting:** allows clients to become web hosts themselves. Resellers could function, for individual domains, under any combination of these listed types of hosting, depending on who they are affiliated with as a provider. Resellers' accounts may vary tremendously in size: they may have their own virtual dedicated server to a colocated server.
- **Virtual Dedicated Server:** dividing a server into virtual servers, where each user feels like they're on their own dedicated server, but they're actually sharing a server with many other users. The users may have root access to their own virtual space. This is also known as a virtual private server or VPS.
- **Dedicated hosting service:** the user gets his or her own Web server and gains full control over it (root access for Linux/administrator access for Windows); however, the user typically does not own the server. Another type of Dedicated hosting is Self-Managed or Unmanaged. This is usually the least expensive for Dedicated plans. The user has full administrative access to the box, which means the client is responsible for the security and maintenance of his own dedicated box.
- **Managed hosting service:** the user gets his or her own Web server but is not allowed full control over it (root access for Linux/administrator access for Windows); however, they are allowed to manage their data via FTP or other remote management tools. The user is disallowed full control so that the provider can guarantee quality of service by not allowing the user to modify the server or potentially create configuration problems. The user typically does not own the server. The server is leased to the client.
- **Colocation web hosting service:** similar to the dedicated web hosting service, but the user owns the colo server; the hosting company provides physical space that the server takes up and takes care of the server. This is the most powerful and expensive type of the web hosting service. In most cases, the colocation provider may provide little to no support directly for their client's machine, providing only the electrical, Internet access, and storage facilities for the server. In most cases for colo, the client would have his own administrator visit the data center on site to do any hardware upgrades or changes.
- **Clustered hosting:** having multiple servers hosting the same content for better resource utilization. Clustered Servers are a perfect solution for high-availability dedicated hosting, or creating a scalable web hosting solution.
- **Grid hosting :** this form of distributed hosting is when a server cluster acts like a grid and is composed of multiple nodes.
- **Home server:** usually a single machine placed in a private residence can be used to host one or more web sites from a usually consumer-grade broadband connection. These can be purpose-built machines or more commonly old PC's.

Some ISPs actively attempt to block home servers by disallowing incoming requests to TCP port 80 of the user's connection and by refusing to provide static IP addresses. A common way to attain a reliable DNS hostname is by creating an account with a dynamic DNS service. A dynamic DNS service will automatically change the IP address that a URL points to when the IP address changes.

Some specific types of hosting provided by web host service providers:

- File hosting service: hosts files, not web pages
- Image hosting service
- Video hosting service
- Blog hosting service
- One-click hosting
- Shopping cart software

# Obtaining hosting

Web hosting is often provided as part of a general Internet access plan; there are many free and paid providers offering these services.

A customer needs to evaluate the requirements of the application to choose what kind of hosting to use. Such considerations include database server software, scripting software, and operating system. Most hosting providers provide Linux-based web hosting which offers a wide range of different software. A typical configuration for a Linux server is the LAMP platform: Linux, Apache, MySQL, and PHP/Perl/Python. The webhosting client may want to have other services, such as email for their business domain, databases or multi-media services for streaming media. A customer may also choose Windows for its hosting platform.

The customer still can choose from PHP, Perl, and Python but may also use ASP .Net or Classic ASP.

Web hosting packages often include a Web Content Management System, so the end-user doesn't have to worry about the more technical aspects. These Web Content Management systems are great for the average user, but for those who want more control over their website design, this feature can sometimes be a nuisance rather than a feature.

Macintosh has supported Apache since the "Tiger" system was introduced, and the Darwin (operating system) provides a Unix-like interface via Terminal.app. Such systems have complete Web hosting capabilities, including support for PHP, and Perl and Shell scripts. Personal Web Sharing can be activated in the Sharing panel of System Preferences...[1].

One may also search the Internet to find active webhosting message boards and forums that may provide feedback on what type of webhosting company may suit his/her needs.

# References

1.  ^ How to Activate Web Hosting on a Macintosh

# See also

- Overselling
- Shared web hosting service
- Dedicated hosting service

Retrieved from "http://en.wikipedia.org/wiki/Web_hosting_service"
Categories: Internet hosting | Website management
Hidden category: Articles needing additional references from March 2008

- This page was last modified on 9 June 2008, at 20:57.
- All text is available under the terms of the GNU Free Documentation License. (See **Copyrights** for details.) Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a U.S. registered 501(c)(3) tax-deductible nonprofit charity.

# EXHIBIT D

1

# UNITED STATES DISTRICT COURT

2

# NORTHERN DISTRICT OF CALIFORNIA

3

## SAN JOSE DIVISION

4

STARLIGHT INTERNATIONAL LTD. LP,
a California Limited Partnership

5

6

              Plaintiff,

7

  v.

8

LIFEGUARD HEALTH LLC, a Delaware Limited
Liability Company

9

              Defendant.

10

11

12

Case No. C08 01894 RS

**AFFIDAVIT OF ROBERT BAUER TO DEFENDANT LIFEGUARD HEALTH LLC'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER VENUE TO PENNSYLVANIA**

**ORAL ARGUMENT REQUESTED**

Judge: The Hon. Richard Seeborg
Date:  June 25, 2008
Time: 9:30am
Courtroom: 4, 5th Floor

13

     I, ROBERT D. BAUER, declare under penalty of perjury that the foregoing is true and

14

correct:

15

1.    I am competent to testify herein and make this statement based on my personal knowledge.

16

2.    I am the President and Chief Operating Officer of Lifeguard Health, LLC ("Lifeguard").

17

3.    Lifeguard was incorporated in 2005 and commenced business operations in March of 2006.

18

4.    Lifeguard is incorporated in Delaware with a principal place of business in Pennsylvania.

19

5.    Lifeguard has little or no business contacts with the state of California.

20

6.    Lifeguard does not own property or bank accounts in California.

21

7.    Lifeguard does not advertise its products in California.

22

8.    Lifeguard does not focus its marketing efforts on California customers.

23

9.    Lifeguard did not designate an agent in California for service of process.

24

10.   Lifeguard does not have any employee in California.

25

11.   Lifeguard does not hold any licenses in California.

26

27

AFFIDAVIT OF ROBERT BAUER (Case No. C08 01894 RS)
PHLDMS1 4282922v.1

12.    Lifeguard is in the business of selling nutritional and dietary supplement products to physicians' offices and select independent pharmacies. A small percentage of Lifeguard's sales are made directly to consumers.

13.    Lifeguard does not sell any nutritional and dietary supplement products to any physicians' offices or pharmacies in California.

14.    Lifeguard does not direct any of its advertising or marketing specifically to California residents.

15.    Lifeguard does not advertise its services through internet advertisers, including search engines.

16.    Lifeguard does not employ a multi-level marketing business distribution model.

17.    Lifeguard maintains a website, www.lifeguardforlife.com, but Lifeguard is not an "e-tailer" as only a small percentage of its total sales are made to customers through Lifeguard's website.

18.    For the period of April 1, 2007 through April 30, 2008, only 9.7% ($104,018.30) of Lifeguard's total sales were made through Lifeguard's website.

19.    Lifeguard's sales to customers in California amounted to only 0.6 % ($6,829.05) of its total sales from April 1, 2007 through April 30, 2008.

20.    Only 0.24 % ($2,559.00) of Lifeguard's total sales were made to customers in California through Lifeguard's website.

    I declare, under penalty of perjury under the laws of the State of Pennsylvania, that the foregoing is true and correct. Executed this 19th day of May 2008.

_Robert D. Bauer_
Robert D. Bauer

SWORN TO AND SUBSCRIBED
before me, a Notary Public, this 19th
day of May, 2008.

_Darlene A. Hunter_
    NOTARY PUBLIC

My Commission Expires: April 19, 2012

AFFIDAVIT OF ROBERT D. BAUER (Case No. C08 01894 RS)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Darlene A. Hunter, Notary Public
Warminster Twp., Bucks County
My Commission Expires April 19, 2012
Member, Pennsylvania Association of Notaries

-2-

# EXHIBIT E





The data contained in GoDaddy.com, Inc.'s WHOIS database,
while believed by the company to be reliable, is provided "as is"
with no guarantee or warranties regarding its accuracy. This
information is provided for the sole purpose of assisting you
in obtaining information about domain name registration records.
Any use of this data for any other purpose is expressly forbidden without the prior written
permission of GoDaddy.com, Inc. By submitting an inquiry,
you agree to these terms of usage and limitations of warranty. In particular,
you agree not to use this data to allow, enable, or otherwise make possible,
dissemination or collection of this data, in part or in its entirety, for any
purpose, such as the transmission of unsolicited advertising and
solicitations of any kind, including spam. You further agree
not to use this data to enable high volume, automated or robotic electronic
processes designed to collect or compile this data for any purpose,
including mining this data for your own personal or commercial purposes.

Please note: the registrant of the domain name is specified
in the "registrant" field. In most cases, GoDaddy.com, Inc.
is not the registrant of domain names listed in this database.

Registrant:
LifeGuard Health

502 west Germantown Pike, Suite 750
Plymouth Meeting, Pennsylvania 19462
United States

Registered through: GoDaddy.com, Inc. (http://www.godaddy.com)
Domain Name: LIFEGUARDFORLIFE.COM
Created on: 04-Feb-06
Expires on: 04-Feb-09
Last Updated on: 01-Feb-08

Administrative Contact:
Bauer, Robert rdbauer@lifeguardforlife.com
LifeGuard Health
502 west Germantown Pike, Suite 750
Plymouth Meeting, Pennsylvania 19462
United States
6108620182

Technical Contact:
Bauer, Robert rdbauer@lifeguardforlife.com
LifeGuard Health
502 west Germantown Pike, Suite 750
Plymouth Meeting, Pennsylvania 19462
United States
6108620182

Domain servers in listed order:
YNS1.YAHOO.COM
YNS2.YAHOO.COM

Registry Status: ok

Report Invalid Whois

See Underlying Registry Data

### Available TLDs

- [ ] LIFEGUARDFORLIFE.ORG $9.99/yr
- [ ] LIFEGUARDFORLIFE. INFO $0.99/yr SAVE!
- [ ] LIFEGUARDFORLIFE.BIZ $14.99/yr
- [ ] LIFEGUARDFORLIFE.US $12.99/yr
- [ ] LIFEGUARDFORLIFE. NAME $14.99/yr

**You might also consider:**

- [ ] LIFEGUARDFORLIFESITE. COM $9.99/yr
- [ ] SITELIFEGUARDFORLIFE. COM $9.99/yr
- [ ] LIFEGUARDFORLIFEONLI NE. NET $9.99/yr
- [ ] ONLINELIFEGUARDFORLI FE. NET $9.99/yr
- [ ] LIFEGUARDFORLIFESTOR E. ORG $9.99/yr
- [ ] STORELIFEGUARDFORLIF E. ORG $9.99/yr
- [ ] LIFEGUARDFORLIFENOW. INFO $0.99/yr SAVE!
- [ ] NOWLIFEGUARDFORLIFE. INFO $0.99/yr SAVE!
- [ ] LIFEGUARDFORLIFEBLOG. BIZ $14.99/yr
- [ ] BLOGLIFEGUARDFORLIFE. BIZ $14.99/yr
- [ ] LIFEGUARDFORLIFESHOP. US $12.99/yr
- [ ] SHOPLIFEGUARDFORLIFE. US $12.99/yr
- [ ] LIFEGUARDFORLIFETODA Y. NAME $14.99/yr

**REGISTER NOW!**

**Interested in this
domain name?**
Let our Domain Buy Service
help you get it.

**$1.99 Domain Names**
Register a domain name
for only $1.99 with each
new, non-domain product.

**World-Class Web Hosting**
Fast, secure, reliable hosting

featuring 99.9% uptime, free setup,
24/7 support & more!

**Safe, Personalized Email**
Get an easy-to-remember
email address with built-in
Fraud, Spam & Virus Protection.

---

›› 24/7 Sales and Support: (480) 505-8877    ›› Billing Questions? Call (480)505-8855    | Free Email Updates! Enter address ___ | GO |

Home | Contact Us | GoDaddy.com® Rewards MasterCard® | Product Advisor | Catalog | How to Pay | Legal | Site Index | Whois | Affiliates |
Resellers | Link to Us | ICANN Domain Confirmation

GoDaddy.tv | GoDaddyLive.com | BobParsons.tv | GoDaddyGirls.info | WildWestDomains.com
DomainNameAftermarket.com | GoDaddyConnections.com

       

GoDaddy.com is the world's No. 1 ICANN-accredited domain name registrar for .COM, .NET, .ORG, .INFO,
.BIZ and .US domain extensions. Source: Name Intelligence, Inc. 2006

Copyright © 1999 - 2008 GoDaddy.com, Inc. All rights reserved. **View offer Disclaimers**



# EXHIBIT F



**DOMAIN-BASED RESEARCH SERVICES**

WHOIS Lookup    [                ] [.com ▾]    [Go!]    Lookup registration data for domains.

**Whois:**  lifeguardforlife.net    lifeguardforlife.org

## Available Domains

☐ securityforspirit.c...    ☐ guardforexistence.c...    ☐ guardforspirit.com    ☐ lifeguardforexisten...
☐ mysecurity4life.com    ☐ securityforlifeonli...    ☐ securityforexistenc...    ☐ securityforspirit.n...
☐ guardforexistence.n...    ☐ guardforspirit.net    ☐ lifeguardforexisten...    ☐ securityforspirit.o...
☐ guardforexistence.o...    ☐ guardforspirit.org    ☐ lifeguardforexisten...    ☐ mysecurity4life.net

[Order Now]

## Premium Domains For Sale

securityforlife.... $1188

Click here for a SiteTiki.com article about lifeguardforlife.com

## WHOIS information for: **lifeguardforlife.com**:

```
[whois.godaddy.com]
The data contained in GoDaddy.com, Inc.'s WhoIs database,
while believed by the company to be reliable, is provided "as is"
with no guarantee or warranties regarding its accuracy. This
information is provided for the sole purpose of assisting you
in obtaining information about domain name registration records.
Any use of this data for any other purpose is expressly forbidden without the prior written
permission of GoDaddy.com, Inc. By submitting an inquiry,
you agree to these terms of usage and limitations of warranty. In particular,
you agree not to use this data to allow, enable, or otherwise make possible,
dissemination or collection of this data, in part or in its entirety, for any
purpose, such as the transmission of unsolicited advertising and
and solicitations of any kind, including spam. You further agree
not to use this data to enable high volume, automated or robotic electronic
processes designed to collect or compile this data for any purpose,
including mining this data for your own personal or commercial purposes.

Please note: the registrant of the domain name is specified
in the "registrant" field. In most cases, GoDaddy.com, Inc.
is not the registrant of domain names listed in this database.


Registrant:
    LifeGuard Health

    Registered through: GoDaddy.com, Inc. (http://www.godaddy.com)
    Domain Name: LIFEGUARDFORLIFE.COM

    Domain servers in listed order:
        YNS1.YAHOO.COM
        YNS2.YAHOO.COM


    For complete domain details go to:
    http://who.godaddy.com/whoischeck.aspx?Domain=LIFEGUARDFORLIFE.COM
```

## Domain Information
Domain Name Registration,  News
Daily DNS Changes,  ICANN

## Hosting Resources
Web Hosting,  VPS,  Managed Hosting,
Windows Hosting,  Windows Servers
Dedicated Web Hosting

*Copyright © 1999-2008*

# EXHIBIT G



## IP Information for 68.142.205.137

| | |
|---|---|
| **IP Location:** | 🇺🇸 United States New York Inktomi Corporation |
| **Resolve Host:** | html1.store.vip.mud.yahoo.com |
| **IP Address:** | 68.142.205.137  W  R  P  D  T |
| **Reverse IP:** | 10,559 other sites hosted on this server. |
| **Blacklist Status:** | Clear |

## Whois Record

```
OrgName:    Inktomi Corporation
OrgID:      INKT
Address:    701 First Ave
City:       Sunnyvale
StateProv:  CA
PostalCode: 94089
Country:    US

NetRange:   68.142.192.0 - 68.142.255.255
CIDR:       68.142.192.0/18
NetName:    INKTOMI-BLK-4
NetHandle:  NET-68-142-192-0-1
Parent:     NET-68-0-0-0-0
NetType:    Direct Allocation
NameServer: NS1.YAHOO.COM
NameServer: NS2.YAHOO.COM
NameServer: NS3.YAHOO.COM
NameServer: NS4.YAHOO.COM
NameServer: NS5.YAHOO.COM
Comment:
RegDate:    2004-03-24
Updated:    2005-08-26

RAbuseHandle: NETWO857-ARIN
RAbuseName:   Network Abuse
RAbusePhone:  +1-408-349-3300
RAbuseEmail:  network-abuse@yahoo-inc.com

OrgAbuseHandle: NETWO857-ARIN
OrgAbuseName:   Network Abuse
OrgAbusePhone:  +1-408-349-3300
OrgAbuseEmail:  network-abuse@yahoo-inc.com

OrgTechHandle: NA258-ARIN
OrgTechName:   Netblock Admin
OrgTechPhone:  +1-408-349-3300
OrgTechEmail:  netblock.admin@yahoo-inc.com
```

# EXHIBIT H

## LifeGuard Health
## 2006-2008 Events

| Date | Event | Location | Specialty |
|------|-------|----------|-----------|
| 11/14-11/17/06 | MFA 12th Annual Conference in conjunction with Athletic Fitness | Las Vegas, NV | Medical Fitness/Wellness Centers |

## 2007

| Date | Event | Location | Specialty |
|------|-------|----------|-----------|
| 3/28-3/31/07 | IHRSA Conference | San Francisco, CA | Medical Fitness |
| 5/8/07 | Lifeguard Health Dinner & Presentation | Washington Crossing, PA | Pharmacy |
| 5/22/07 | Lifeguard Health Dinner & Presentation | Philadelphia, PA | Family Practice |
| 7/`6/07 | Lifeguard Health Dinner & Presentation | Hazleton, PA | Multi-Specialty |
| 7/17/07 | LifeGuard Health Dinner & Presentation | Stroudsburg, PA | Multi-Specialty |
| 7/26/07 | Lifeguard Health Dinner & Presentation | Blue Bell, PA | Multi-Specialty |
| 8/2/07 | LifeGuard Health Dinner & Presentation | West Chester, PA | Chiropractors |
| 8/2007 | Pennsylvania Chiropractic Association Conference | Champion, PA | Chiropractors |
| 9/27-9/28/07 | PPA Annual Conference | Allentown, PA | Pharmacy |
| 9/30/07 | National Cornea & Anterior Segment Meeting | Plainview, NY | Eye |
| 10/12/07 | Omnia Education-Innovations in Gynecology | Philadelphia, PA | Women's Health |
| 10/16/07 | Pharmacy Association Meeting | Allentown, PA | Pharmacy |
| 10/19/07 | Omnia Education-Innovations in Gynecology | Pittsburgh, PA | Women's Health |
| 10/24-10/27/07 | Academy of Optometry | Tampa, Fl | Eye |
| 11/8/07 | Lancaster County Optometric Society Meeting | Ephrata, PA | Eye |
| 11/14/07 | PA County Optometric Society Meeting | Philadelphia, PA | Eye |
| 11/15/07 | Chester/DValley Optometric Society Meeting | Newtown Square, PA | Eye |
| 11/16/07 | Omnia Education-Innovations of Gynecology | Washington, DC | Women's Health |
| 11/19/07 | Lehigh Valley Optometric Society Meeting | Bethlehem, PA | Eye |

# 2008

| Date | Event | Location | Specialty |
|---|---|---|---|
| 1/17-1/19/08 | Integrative Healthcare Symposium | New York NY | Integrative Medicine |
| 2/9-2/10/08 | Life Begins at 50 | Atlantic City, NJ | Consumer |
| 3/20/08 | Central PA County Optometric Society Meeting | Hershey, PA | Eye |
| 2/27/08 | KPPA Pharmacy Dinner Program | Philadelphia, PA | Pharmacy |
| 2/27-3/2/08 | SECO International 2008 Conference | Atlanta, GA | Eye |
| 3/6/08 | Northwest County Optometric Society | Meadville, PA | Eye |
| 3/27/08 | KPPA Pharmacy Dinner Program | Center Valley, PA | Pharmacy |
| 3/28/08 | Innovations of Gynecology-Omnia Education | Philadelphia, PA | Women's Health |
| 3/30/08 | Glaucoma-Cataract Consultants Program | Pittsburgh, PA | Eye |
| 4/2/08 | Integrative Nutrition Therapy Conference | Brooklyn, NY | Nutritionists |
| 4/9/28 | Anthracite Local Optometric Society Meeting | Orwigsburg, PA | Eye |
| 4/25/08 | Value Drug Conference | Altoona, PA | Pharmacy |
| 4/30-5/2/08 | PA Osteopathic Medical Association | King of Prussia, PA | Multi-Specialty |
| 5/13/08 | Minnesota Eye Foundation Program | Bloomington, MN | Eye |
| 5/15/08 | Central Florida Physician Alliance Dinner Meeting | Lakeland, Fl | Multi-Specialty |
| 5/29/08 | LifeGuard Health Presentation-Rodale | Emmaus, PA | Consumer |
| 6/7/08 | Dry Eye Course-Primary Eye Institute | Atlantic City, NJ | Eye |