*E-FILED 7/22/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STARLIGHT INTERNATIONAL, LTD. LP, a California Limited Partnership<br><br>    Plaintiff,<br>  v.<br><br>LIFEGUARD HEALTH, LLC, a Delaware Limited Liability Company,<br><br>    Defendant. | NO. C 08-1894 RS<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

## I. INTRODUCTION

Defendant Lifeguard Health LLC ("Lifeguard") moves to dismiss this trademark infringement and unfair competition suit for lack of personal jurisdiction or, in the alternative, to transfer venue to Pennsylvania. Plaintiff Starlight International, LTD. LP ("Starlight") opposes the motion. Because Lifeguard purposefully availed itself of the benefits of this State, its motion to dismiss for lack of personal jurisdiction will be denied.

## II. BACKGROUND

Starlight is a limited partnership whose primary place of business is in Monterey, California. Starlight markets and sells dietary tablets and supplements, and alleges that it owns the registered trademarks "Lifeguard," "Lifeguard Junior," and "Lifeguard Joint Formula." Lifeguard is organized under Delaware law and operates from its principal place of business in Pennsylvania. Lifeguard also markets and sells dietary and nutritional supplements. Lifeguard maintains an interactive website where it displays and sells its dietary supplements.

1

On April 9, 2008, Starlight filed a complaint against Lifeguard claiming trademark infringement in violation of the Lanham Act, common law trademark infringement, and unfair competition. Starlight believes that the dietary supplements displayed on Lifeguard's website, products shipped through interstate commerce, and the use of the mark "Lifeguard" to sell, offer for sale, and advertise dietary supplements infringe on Starlight's registered trademarks.

According to Lifeguard, Starlight's complaint fails to demonstrate a basis for the exercise by this court of personal jurisdiction over Lifeguard. Lifeguard's motion to dismiss for lack of personal jurisdiction is based on Lifeguard's contention that it has little or no business contacts in California, does not advertise its products in California, and does not focus its advertising on California consumers. Lifeguard points to the facts that 90% of its products go directly to physicians and doctors located outside of California, it conducts no online or physical advertising targeting California consumers, and it attributes only 0.24% of sales to California online consumers.

In response, Starlight contends that five contacts allow the Court to exercise its general jurisdiction over Lifeguard. These contacts include the fact that: (1) Lifeguard conducts less than 1% of its total sales to California consumers; (2) Lifeguard sent representatives to a health and fitness-related tradeshow in San Francisco, which was hosted by the International Health Racquet & Sportsclub Association ("IHRSA") and welcomed over 420 health-related exhibitors; (3) a California company, MPower Solutions, lists Lifeguard as a "Healthy Retail Partner" and endorses a Lifeguard product on its website; (4) Lifeguard contracted California based Yahoo! Inc. to process its internet sales and agreed to a choice of forum clause naming California as the forum for disputes arising from the contract with Yahoo!; and (5) a California company, Inktomi, hosts Lifeguard's website. If general jurisdiction is lacking, Starlight also argues that Lifeguard purposefully directed its business at California through its $6,829 of direct sales, of which $2,559 were sales to California consumers via its website over thirteen months, through approximately twenty transactions. Other actions purposefully directed to California include Lifeguard's participation in a San Francisco tradeshow, a retail partnership with MPower Solutions, and an e-commerce relationship with California based Yahoo!.

### III. LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure governs dismissal for lack of personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 921 (9th Cir. 2001). As the party invoking the court's protection, plaintiff bears the burden of establishing the court's jurisdiction over defendant. *Id.* at 922. When the question of jurisdiction is resolved without an evidentiary hearing, plaintiff need only make a prima facie showing that jurisdiction exists; unless directly contravened, plaintiff's version of the facts will be taken as true and all conflicts resolved in its favor. *Id.*

When, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court is located applies. *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (per curiam). California's long-arm statute permits the "exercise of jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. P. Code § 410.10. Accordingly, the exercise of jurisdiction must comport with due process. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A defendant who is not present in the forum may be subject to jurisdiction only when it has certain minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.* In judging the sufficiency of these minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

### IV. DISCUSSION

A. <u>General Jurisdiction</u>

Starlight asserts that it presented a prima facie case of general jurisdiction in California. "General jurisdiction refers to jurisdiction to adjudicate claims that do not arise from the defendant's contacts with the forum state. Thus, if a defendant is amenable to general jurisdiction in a state, the state may exercise jurisdiction over the defendant based on any claim, including claims unrelated to the defendant's contacts with the state." *Coremetrics, Inc. v. AtomicPark.com, LLC,* 370 F. Supp. 2d 1013, 1016 (N.D. Cal. 2005) (citation and quotation omitted). In order for a court to exercise general jurisdiction over a non-resident defendant, that defendant must engage in "continuous and systematic" or "substantial" activities within the forum state, such that its contacts "approximate

3

physical presence" within the state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

The Ninth Circuit considers a number of factors in determining whether general jurisdiction exists, including "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft*, 223 F.3d at 1086. Courts use these factors to examine the "economic reality" of a defendant's activities instead of a mechanical checklist. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984). "The foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980).

Here, Starlight asserts that five Lifeguard contacts, when considered in their totality, give rise to general jurisdiction in this forum. As mentioned previously, these contacts include the fact that: (1) Lifeguard conducts less than 1% of its total sales to California consumers; (2) Lifeguard sent representatives to a health and fitness-related tradeshow in San Francisco, which was hosted by the IHRSA and welcomed over 420 health-related exhibitors; (3) a California company, MPower Solutions, lists Lifeguard as a "Healthy Retail Partner" and endorses a Lifeguard product on its website; (4) Lifeguard contracted California based Yahoo! Inc. to process its internet sales and agreed to a choice of forum clause naming California as the forum for disputes arising from the contract with Yahoo!; and (5) a California company, Inktomi, hosts Lifeguard's website.

Considered independently or together, these contacts are not so substantial, continuous, and systematic that Lifeguard can be deemed present in California for all purposes. First, Lifeguard satisfies few of the traditional *Bancroft* factors: Lifeguard is incorporated in Delaware and has its primary place of business in Pennsylvania. Neither does Lifeguard own property, have bank accounts, hold licenses, or retain employees or agents to receive process in California, nor does it market its products in California or specifically target California consumers through agents, internet search engines, internet advertisers, or its interactive website.

Additionally, in asserting general jurisdiction, Starlight relies heavily upon analogy to *Coremetrics*. The *Coremetrics* court found that a totality of circumstances supported a finding of general jurisdiction, where defendant had no physical presence in California but: (1) maintained an interactive website by which it sold its products and which was accessible to California consumers; (2) advertised its services through Yahoo! and other California firms; (3) sold products to California consumers; and (4) agreed to personal jurisdiction in California and/or application of California law in its agreements with Yahoo! and other California firms. 370 F. Supp. 2d at 1017-19, 1021.

The economic realities surrounding the *Coremetrics* defendant, however, are easily distinguished from those involving Lifeguard. First, over a ten-month period, defendant used its interactive website to sell 14%, or $3.3 million, of its total product to California consumers, representing the highest percentage of product sold to consumers from any one state. *Id*. at 1022. Here, Lifeguard sold only 0.6%, or $6,829, of its product to California over thirteen months. Second, while defendant engaged in most of its website sales to California consumers, Lifeguard conducted only forty-five transactions in California. *Id*. Moreover, defendant was foremost an online retailer, which broadly advertised its products to online consumers and hosted a website designed to provide all the same products and services available in a physical store. *Id*. at 1021. Lifeguard, on the other hand, sells 90% of its product directly to physicians and doctors located outside of California, conducts no online or physical advertising targeting California consumers, and attributes only 0.24% of sales to California online consumers. Finally, the *Coremetrics* court considered a choice of forum clause as the least significant factor to consider linking defendant to California. *Id*. at 1024. Regardless, Lifeguard's choice of forum agreement with Yahoo! applies only to disputes arising out of that agreement. *See Gates*, 743 F.2d at 1331 (determining there was no general jurisdiction because a choice of forum provision in the purchase agreement applied only to disputes arising out of that agreement). The totality of these contacts would not make Lifeguard reasonably anticipate being haled into court in California. Accordingly, general jurisdiction is lacking.

B.  <u>Specific Jurisdiction</u>

"Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes, a forum may exercise only 'specific' jurisdiction — that is, jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim." *Yahoo!,* 433 F.3d at 1205. The Ninth Circuit analyzes specific jurisdiction under a three-pronged test:

> (1) The non-resident defendant must purposefully direct his activities . . . or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) [T]he claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) [T]he exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 1205-06. In doing so, the Ninth Circuit weighs the *extent* of defendant's forum contacts against the degree to which plaintiff's suit is related to those contacts. *Id.* at 1210. "A strong showing on one axis will permit a lesser showing on the other. A single forum state contact can support jurisdiction if the cause of action . . . arises out of that particular purposeful contact of the defendant with the forum state." *Id.* at 1210 (quotation omitted). As the party invoking jurisdiction, Starlight bears the burden of establishing the first two prongs of the test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Under the third prong, Lifeguard has the burden of demonstrating unreasonableness. *Bancroft*, 223 F.3d at 1088.

Starlight phrases its argument for specific jurisdiction in terms of purposeful *direction*, but applies a purposeful *availment* analysis. Courts use "purposeful availment," in shorthand fashion, "to include both purposeful availment and purposeful direction, but availment and direction are, in fact, two distinct concepts. A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802. As purposeful availment warrants the exercise of specific jurisdiction over Lifeguard, a purposeful direction analysis need not be reached.

1.  <u>Purposeful Availment</u>

Starlight asserts that Lifeguard purposefully directed its business at California through four contacts: (1) internet and direct sales to California consumers; (2) participation in the San Francisco

6

tradeshow; (3) a retail partnership with MPower Solutions in California; and (4) an e-commerce relationship with Yahoo!. This prong "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo!*, 433 F. 3d 1199 at 1206.

Lifeguard's $6,829 of direct and internet sales to California consumers are sufficient evidence of purposeful availment of this forum, and thereby fulfills the first prong. Purposeful availment usually consists of actions taken within the forum state, such as the execution or performance of a contract. *Schwarzenegger*, 374 F.3d at 802. By availing oneself of the privilege of conducting activities within the forum state through these actions, Lifeguard invoked the benefits and protections of the forum's laws. *Id*. In return for these "benefits and protections," a defendant must submit to the burdens of litigation in that forum. *Id*. at 802. In choosing to avail itself of this privilege, Lifeguard "has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State." *World-Wide Volkswagen*, 444 U.S. at 297.

Lifeguard argues that its California sales do not constitute purposeful availment, since Lifeguard does not "target" Californian consumers in particular. Rather, its products are available through an internet website accessible by anyone. Courts within the Ninth Circuit have concluded, however, that a company's use of an interactive website may constitute purposeful availment of a forum. In *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414 (9th Cir. 1997), the Ninth Circuit cites, with approval, the "sliding scale" approach applied in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997), to determine whether use of a website amounts to purposeful availment. The *Zippo* court determined that:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. . . . At one end of the spectrum [when specific jurisdiction is proper] are situations where a defendant clearly does business over the Internet. . . . At the opposite end [when specific jurisdiction is improper] are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. . . . The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of

7

      interactivity and commercial nature of the exchange of information that occurs on the Web site.

952 F. Supp. at 1124 (citations omitted).  While *Cybersell* held that hosting a passive, informational website accessible by members of the forum state did not confer specific jurisdiction, a later trial court decision applying *Cybersell*, *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074 (C.D. Cal. 1999), found specific jurisdiction proper under *Zippo*, where a non-forum company sold products to California consumers through an *interactive* website.  In *Stomp*, the court held that "by maintaining a commercial website through which it markets and sells its [self-adhesive CD labeling systems, defendant] NeatO . . . reached out beyond its home state of Connecticut to avail itself of the benefits of the California forum."  61 F. Supp. 2d at 1078.  The *Stomp* court distinguished *Cybersell*, noting that NeatO's website was not passive, but interactive, had generated actual sales to California consumers, and therefore established sufficient minimum contacts to invoke personal jurisdiction in California.  *Id*. at 1077.  Finally, the court noted that "[a]lthough the actual number of sales to California citizens may be small, the critical inquiry in determining whether there was a purposeful availment is the quality, not merely the quantity, of the contacts."  *Id*. at 1078.

      Lifeguard made $2,559 of sales to California consumers via its website over thirteen months, through approximately twenty transactions.  Lifeguard's interactive website generated numerous sales in California, which are sufficient to provide Lifeguard with a reasonable expectation that it may be haled into a California court to respond to disputes arising out of those transactions.  Moreover, as Lifeguard's inventory demonstrates, the company can identify where sales are made or products shipped.  Because Lifeguard has purposefully availed itself of the benefits of the California consumer base, it must submit to specific jurisdiction in disputes arising out of the sale of the allegedly infringing products.[1]

---

[1] Starlight asserts additional bases for a finding of purposeful availment, including that Lifeguard participated in a California tradeshow, utilizes the services of two California corporations — Yahoo! and Inktomi — in generating web sales, and maintains a retail partnership with MPower Solutions.  Participation in a tradeshow may demonstrate purposeful availment when combined with the sales to California consumers.  However, Lifeguard's engagement of Yahoo! and Inktomi do not demonstrate purposeful availment of a California forum because the services provided by each company are online services and are not particularly tied to California.  As to Lifeguard's partnership with MPower Solutions, "[a] defendant may only be subjected to the jurisdiction of the court arising out of his own actions; he is not responsible for the unilateral activities of a third party."  *Kronzer v.*

8

### 2. Arising Out Of

To fulfill the second prong, the "contacts constituting purposeful availment must be the ones that give rise to the current dispute," as measured by the "but for" causation test. *Bancroft*, 223 F.3d at 1088. Lifeguard's contacts in California – namely its website and advertising in a California tradeshow – resulted in sales that allegedly violated Starlight's trademark. Presuming facts in the light most favorable to Starlight, the alleged trademark violation gave rise to this action and therefore fulfills the second prong of the Ninth Circuit test.

### 3. Reasonableness

Once a plaintiff establishes the first two prongs, defendant bears the burden of showing that the third prong, reasonableness, has not been met. That is, a finding of specific jurisdiction would be unreasonable. The Ninth Circuit balances seven factors in its reasonableness inquiry: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden of defending in the forum state; (3) the extent of the conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Bancroft*, 223 F.3d at 1088. *Gates*, 743 F.2d at 1332 (citing *Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 399 (9th Cir. 1981)). "These factors are not mandatory tests . . . [but] illuminate the considerations of fairness and due process . . . ." *Hedrick v. Daiko Shoji Co., Ltd*, 715 F.2d 1355, 1359 (9th Cir. 1983).

Lifeguard asserts that granting personal jurisdiction in California would be unreasonable because Lifeguard's volume of sales in California are low, and the costs and burden of defending the suit here relative to these sales would be disproportionately high. Lifeguard further contends that a Pennsylvania forum would be more efficient because documents and witnesses are likely to be located in Pennsylvania. Moreover, Lifeguard maintains that Pennsylvania's sovereign interests are implicated because Lifeguard would be dragged to California to defend a suit when its business had

---

*Burnick*, No. C 04-02125 RS, 2004 WL 1753409, at *4 (N.D. Cal. Aug. 5, 2004).

9

1 little or no contacts with California. These assertions are insufficient to establish the requisite
2 showing of unreasonableness.

3   Contrary to Lifeguard's assertion, Starlight has shown, as noted above, that Lifeguard
4 purposefully injected itself into California by directing its business in part to California internet
5 consumers. Lifeguard cites no case authority supporting its contention that the costs of litigating its
6 suit in California need be proportionate with its *sales* here; given that Starlight is alleging trademark
7 infringement. Furthermore, while the burden on Pennsylvania-based Lifeguard of litigating in
8 California is not negligible, Lifeguard has not shown a compelling reason why litigation in
9 California would be any more burdensome on Lifeguard than litigation in Pennsylvania would be
10 upon Starlight. Lifeguard's contention that documents and witnesses are likely to be located in
11 Pennsylvania is not compelling since Lifeguard fails to identify any documents or witnesses of
12 which this would be true. Additionally, it is unclear why documents could not be easily transported.
13 Finally, while it is correct that Pennsylvania has an interest in ensuring that its citizens are not
14 dragged into foreign jurisdictions to defend suits where they have few contacts, the first two prongs
15 of the Ninth Circuit test are applied to prevent such an occurrence. As Lifeguard has not presented a
16 compelling reason to ignore California's legitimate interest in protecting against alleged violations of
17 a trademark registered to a California company, through products sold to Californians, this factor
18 must swing in Starlight's favor. Consequently, the exercise of jurisdiction over Lifeguard on this
19 record is well short of "unreasonable."

## V. CONCLUSION

Starlight has made a sufficient showing of specific jurisdiction under the Ninth Circuit test. Accordingly, Lifeguard's motion to dismiss is denied.[2]

IT IS SO ORDERED.

Dated: July 22, 2008

RICHARD SEEBORG
United States Magistrate Judge

---

[2] Lifeguard moves, in the alternative, to transfer venue to Pennsylvania. Upon motion of a party, a district court may transfer a civil action to any other district where the case may have been brought, if doing so would further the interests of justice and the convenience of the parties. 28 U.S.C. § 1404(a). However, a moving party bears the burden of showing that transfer would serve these interests. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). As Lifeguard has failed to identify the relevant statute or present any arguments in favor of venue transfer, Lifeguard's motion to transfer is denied with prejudice.

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Lawrence Joseph Bistany    bistanyl@whiteandwilliams.com

David G. Freedman    dgf@dfreedman.net

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 7/22/08**                    **Richard W. Wieking, Clerk**

                            **By:    Chambers**